Good morning, your honors. May it please the court. My name is Ethan Ballow and I speak for Samuel Medway. Samuel Medway has served 30 years of a seven-to-life sentence for his participation in the beating and shooting of Dallas Foster on May 27, 1977. May 1977 was a long time ago. Like many of us, Samuel Medway has changed considerably in the past 30 years. He's no longer a drug addict, having been sober for more than a quarter of a century, this aberrant event marks Sam Medway's sole encounter with violence in his entire life. These changes are important. In this case, in 2003, the California Board of Prison Terms granted Mr. Medway parole. That finding was long overdue. It was Mr. Medway's 13th time before the parole board. And the parole board, when reviewing his rehabilitative strides, the psychological reports, the evidence in the record found that he had fully rehabilitated himself. He posed no risk to society and the standard, no unreasonable risk, such that he was suitable for parole. When they calculated his time in prison, they determined that he had served too much time. And but for amendments to the California Constitution, 1988, he would have been released that very day in October 2003. But he was not released. The governor from the 1998 constitutional amendment had the right to review that grant of parole. And in March 2004, Governor Schwarzenegger did review it, reversed it. This appeal arises from the propriety of that reversal. The standard that's applicable in this case is set forth most succinctly in Irons v. Carey, which has been amended since the time the briefs were filed in this case. Unfortunately, it still does not have an F-3rd site as of last night, but it can be found at 2007, Westlaw, WL2027359. And under the Irons standard, this court must review the record in order to determine whether the state court decision holding the governor's findings were supported by some evidence and were not otherwise arbitrary constituted an unreasonable application of the Supreme Court's pronouncements in Superintendent v. Hill. In this case, the San Bernardino's findings are the key, as are the governor's findings. And the San Bernardino court's findings may be found at the excerpts of record at page 157. The Supreme Court found four bases to support the governor's finding that Mr. Medway currently is an unreasonable risk to society, an unreasonable risk of danger. I'm going to address all four of them because they are either factually inaccurate or legally uncognizable such that they are an unreasonable application of the Hill standard or otherwise arbitrary. First, the district court found, excuse me, the superior court found that there is simply no evidence in the record that the petitioner regrets his actions resulted in the horrible death of another person. The record does not support the superior court in the least. As we set forth in our opening paper, Mr. Medway has consistently expressed remorse for his actions. As we quoted at the beginning on page 23 of our opening brief, Mr. Medway said, I do not, as Mr. Medway's attorneys, excuse me, Ms. Medway said, when I sobered up and realized what I had done, you know, it put me in a devastating state of mind because, you know, it's just something that I've never done before and I felt really bad, you know, because the question was. Mr. Medway goes on, but in answer to your question of whether he has remorse, yes, I felt really bad. It wasn't the only time Mr. Medway said that. He's told on numerous occasions that he, quote, realized the magnitude and severity of his crime. He knows he would like to change it, but he can't. On repeated occasions before the Psychological Board and the Parole Board, he said if he could change one thing in his life, he would change the tragic events of May 27, 1977. The opposition is going to say that, yes, he's indicated he's sorry for the death, but he hasn't come forward to indicate his own complicity in being sorry for what happened at the party and being sorry for it. That is, the death itself, he's very sorry for, but the opposition says, but he's never really come to grips with being sorry for what he did, his part of it. Is that true? As Mr. Medway fully admitted, and I'll cite to page 113 of the excerpts of record, I participated, you know, in some of the atrocious acts that happened at that party. I admit to that. I take full responsibility for the things I've done at the party, you know. Further, when questioned about being the person who set all this in action, the alleged instigator, Mr. Weddy accepted his role, saying again, yes, I'll accept that. I will accept that. So my learned colleague may say that, but the record would not support him if he did. There's simply no evidence in the record to support the superior court's factual determination that there was no expression of remorse in the record. It's factually noncognizable, and it doesn't support Hill. Importantly as well, under Title 15, California Court of Regulations, Section 2402C, it is looks to a parole determination, it looks to the California regulations to determine in the first instance whether factors being considered are properly, may properly be considered by the court, or in this case, ultimately by the governor. And the expressions of remorse is a factor tending to support suitability. 2402B is a section which describes factors tending to support a finding of unsuitability. So a finding, if the governor didn't see remorse, he could look at the record and couldn't see the quotes I just pulled out, didn't recognize them. Well, that might mean that there was an absence of a factor tending towards suitability. But the governor is not permitted to change that factor into a negative factor and then say, because there's an absence of it, that supports a finding of unsuitability. The California Court of Regulations are clear. It is not a factor to be considered towards tending to support unsuitability. So for both of those reasons, that reasoning of the San Bernardino Superior Court is an unreasonable application of the Hill Standard, and it can't support the governor's finding of reversal. The second factor I'd like to bring up is listed as number two on page 157 of the excerpt of record, the San Bernardino Superior Court opinion. And the court said, Mr. Medway's post-release plan was to live in an alcohol recovery lodging, but the place had no bed for him, and the Superior Court judge cites pages 21 and 22 of the record. This too is factually inaccurate. If you look at excerpts of record page 96, it is clear from the parole board hearing that the alcohol recovery center said, there's no bed for you today, but when you're released, a bed will be made available to you. Moreover, in addition to that bed, which the record shows would be made available upon his release, Mr. Medway's family, there was 18 signatures on a petition that guaranteed him a place to live when he was released from prison. Indeed, Mr. Medway's community of friends is here today to show his support because he has a community to return to. So the Superior Court's determination that there was no bed is an unreasonable application of Hill because there's no facts to support it. The last sentence of that paragraph says, he had no job to go to. That is true. And this is an important part of the Hill standard. Again, if we look at 2402C of the California Code of Regulations, the governor may look to whether or not the prisoner has realistic plans for release. That's the quote, realistic plans for release. And everyone, the parole board, the prison psychologist, all found he had realistic plans. He had met with this and sent letters to the job county of San Bernardino job fair. They told him they would get him an interview. He had a guarantee of a ride to an interview. They said they can't give you a job unless you get out. He had realistic plans. Everyone agreed he had realistic plans. The governor then converts that and says, but he didn't have a job. And the question the Superior Court answered is, well, the governor said he didn't have a job, so that's true. And because it's true, there's evidence in the record to support his decision. But that's not the test. The test is, did the governor cite evidence that under the standards enunciated by California show that he's an unreasonable danger to society? So yes, he had no job to go to, but the test is, did he have realistic plans? Because that would tend to show whether someone upon release is likely to reoffend or not. Are their plans realistic? Have they got a trade is the next part of that 2402 standard. Mr. Medway has four. So the fact he has no legal job to go to just doesn't matter. It's still an unreasonable application of Hill because he need not show that. It makes it arbitrary. It makes the governor say, I'm going to take a factor that has been set down and twist it to support a denial of parole. Indeed, 2402, the realistic plans for parole, like the previous section on remorse, may only be considered as a factor tending for suitability. It may not be turned around as a factor against suitability. For those same reasons, factor two is it doesn't find support in the Superior Court, which made an unreasonable application of Hill. The third piece, Superior Court found a psychological evaluation stated that Mr. Medway would be a minimal risk to society if released. However, another report stated that he was a low risk for future violence in the absence of substance abuse. And this relates to the governor's determination that because of work scheduling conflicts in prison, Mr. Medway ceased going to Narcotics Anonymous a number of years ago. But again, that has several flaws. One, there's no record evidence to show at this time Mr. Medway's likely to return to use of drugs. There is no doubt that the psychological reports and the parole board were rightly concerned that if Mr. Medway returned to drug abuse, that in that circumstance, he would pose an unreasonable risk to society. For one of those reasons, the parole board required that Mr. Medway attend NA and NA as a condition of release, that he be subjected to regular drug testing as a condition of release, to ensure that that possibility was minimized. But the question then becomes, is there record evidence under Hill to show that at this point in time, Mr. Medway is likely to resume to drug use? And there is none. The record is replete with psychological reports and board reports stating that he is fully in remission. He has access to drugs in prison. He has not returned to using them. Even after ceasing to go to NA, he has a return to use of drugs, has turned down drugs, has been drug free. So there's no record evidence to show that that commitment to sobriety is in danger. And without evidence now to claim that he could return to drug use is speculation. That is arbitrary. That's an unreasonable application of Hill. Which leaves us with the last one, the circumstances of the crime. Can this immutable fact of 30 years after the fact continue to have predictive value for Mr. Medway's current conduct? I think your time is up, counsel. I don't? Thank you, Your Honor. Excuse me just a minute, counsel. You cited a case for us. If you could, after the argument, the clerk will give you some paper. You could write the case in a citation down for our benefit and give a copy to counsel. Yes, Your Honor. Good morning, Your Honors. May it please the Court, Deputy Attorney General Charles Chung for the respondent appellee. Appellant challenges the Governor's reasons for denying parole and asks this Court to review the evidence, to reweigh the evidence, and to disagree with the Governor's decision. However, the AEDPA does not permit relief unless the State of California has a reasonable application of clearly established federal law as determined by the Supreme Court. Now, the Supreme Court explained what clearly established federal law meant in Kerry v. Mousladen. In Mousladen, the Court explained that clearly established federal law refers only to the Supreme Court holdings as applied by the Supreme Court. And here, appellant points to no Supreme Court case that supports his contention that this Court should review the Governor's decision for some evidence. The only Supreme Court case that deals with a parole matter and with what procedural due process applies to State parole proceedings is the Supreme Court's case, Greenholz. In Greenholz, the Court held that State parole procedures afford adequate due process where, one, they afford the inmate with an opportunity to be heard, and two, if the inmate is denied parole, the parole authority informs him in what ways he falls short of qualifying for parole. The Supreme Court was clear in saying, quote, the Constitution does not require more. And here, there is no question that Medway received an opportunity to be heard, and when he was denied parole, he was informed in what ways he fell short for qualifying for parole. The Supreme Court declined further scrutiny into State parole proceedings, rejecting the procedures imposed by the lower courts, such as scrutiny into the merits of a parole decision. One of the procedures that the lower courts had imposed was, in Greenholz, was that the Supreme Court rejected that. The Supreme Court acknowledged that there was no ideal, error-free way to make parole release decisions, but that the State should be given the leeway to experiment with the parole system and not burden it unduly. The notion that, in Kerry v. Masladen, that the Supreme Court holdings cannot be applied by analogy to other factual circumstances actually has been adopted by this Court subsequent to the Masladen decision. In Foote v. Del Papa, this Court noted that Federal relief was not proper under the AEDPA when the habeas claims implicated an open question in Supreme Court decisional law. Here, whether the Governor's decision to deny parole should be scrutinized on the merits, as opposed to whether the inmate was given the Greenholz procedures, there is no Supreme Court case that supports that. At best, whether the merits of a parole decision should be scrutinized on the merits is an open question in Supreme Court decisional law. For that reason, some evidence simply does not apply. So we look at whether he was afforded the Greenholz procedures, and he was. He had the he was given an explanation in what ways he fell short of parole. Now if this Court were to apply the sum evidence under the Superintendent v. Hill standard, this Court must look to see whether the State courts had unreasonably applied that standard. Now the Hill test, as the Supreme Court explained to us, is minimally stringent. And in Superintendent v. Hill, the Court looked at disciplinary conviction and the revocation of good time credits. And there, the Court held that the sum evidence was applicable because due process required a disciplinary board to fully explain the evidence relied upon in revoking good time credits, which is another reason why the sum evidence does not apply. But in Hill, Hill did not look at the State law statutes, the State regulations applicable to the disciplinary proceeding. Instead, the Court simply looked at the record and see whether there was any evidence that supported the decision to revoke the good time credits. And there, there was no direct evidence in Hill that the inmates had, which of the three inmates had committed the assault. And in fact, the victim, another inmate, gave a written statement saying none of the three accused inmates had assaulted him. But the prison guard had heard of the attack when investigated and saw the three inmates running away. Based upon his testimony alone, that testimony, the eyewitness testimony, the Court found that there was some evidence supporting the decision. And here what we have is a person who participated in the abuse and torture of, of an inmate. He is seeking parole without having secured any treatment. He hasn't participated in any treatment since 1999. He, he applied for a home in a, for a bed in a treatment house and the Gibson house had written him a letter saying that they did not have a bed for him. And the governor found those two, two elements important. Going back to the latest psychological evaluation of him, which said that his risk for violence is tied to his employment status and to his ability to stay substance free, abuse free. And where he has not been in treatment since 1999 and whether or not he participates or partakes of drugs or alcohol in, in the prison is not necessarily relevant because he isn't proceeding with treatment, a treatment plan. Those factors alone in the governor's eyes elevates the risk of recidivism. And that alone is as some evidence support the governor's decision. And with respect to the board and the governor coming to different views of the evidence, looking at Hill, the Supreme Court said that the test doesn't, that it need not look at, I'm sorry, I'm sorry. That the evidence need not logically preclude any conclusion but the one derived by, reached by the state authority. So that the governor and the board disagree is, is not pertinent for federal due process analysis. And under state law, the governor and the board is entitled to weigh the evidence independently and, and, and come to a parole decision. Counsel, the governor, the governor relied on several factors taken from the penal code. He relied on four. I take it those are the factors we're supposed to evaluate in this case. I would disagree, Your Honor. Actually, if, if you're looking, looking at Hill and in the way, if determining whether there was an unreasonable application of Hill, you'd have to look and see in Hill, did the Supreme Court look at the underlying state law statutes to, to outline its analysis? And it did not. It simply looked at the record to see whether there was any, any evidence supporting the decision to deny parole. And saying that we would need to look at the, the regulations outlining parole, that is an issue of state law. Whether the governor complied with that, that's, that's an issue of state law. The governor did comply with it. Excuse me. The governor decides that he's going to make a decision. He overrules the parole board. He identifies the statute he thinks is appropriate. He cites four reasons why he doesn't think the parole board was correct. Now, I, I don't quite get your argument. Isn't it those, isn't that the issue before us, whether that constitutes some evidence? Well, the issue before the court is whether there was an unreasonable, under the AEDPA, whether there was an unreasonable. I understand that. But let's, let's get the facts of the case. Aren't those the facts of the ones, aren't those, what the governor said, isn't that what the test we apply? Isn't that going to be circulate? Well, the sum evidence test does not clearly establish federal law. And the sum evidence test as applied to parole is still an open question in Supreme Court decisional law. But if, if we were to apply the sum evidence test, then we would have to compare it and see whether Hill was unreasonably applied. And here, Hill was not unreasonably applied because there is evidence showing that his risk of violence is directly tied to... Okay. The government, the governor states four reasons. Yes, Your Honor. Is the sum evidence test, as you understand it, that he has to be correct on all four or just one? No, Your Honor. That if there is any evidence in the, under Hill... Sum. If there is any evidence in the record... Any rather than sum? Well, the sum evidence test looks for any evidence in the record to support the decision. That is, that was the standard as articulated by the Supreme Court in Hill. And looking at, looking at the evidence, there is, there is, there is evidence supporting the governor's decision. Looking at the, the, the gravity of the crime, the circumstances of the offense, as well as the lack of treatment and his no plans, no, no employment, and no plan for treatment, which a psychologist determined was directly tied to his capacity to, for recidivism. Thank you, Your Honor. Thank you. The case of Medway v. Schwarzenegger, case number 0556626, is now submitted. We will now hear the case of Williams v. Gherbino. And I'm not sure I say that exactly correct. But it's case number C.
judges: Wallace, Nelson, Smith